UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

AT LAW AND IN ADMIRALTY

SHARON SPALDING,

Plaintiff,

v.

CASE NO.: 1:25-cv-20810

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,
a Foreign Profit Corporation,

Defendant.
_______________________________/

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY**

Plaintiff, SHARON SPALDING, hereby sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE and files this Complaint for Damages and says:

**THE PARTIES AND JURISDICTION**

1. This is an action for damages which exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

2. **THE PLAINTIFF.** Plaintiff, SHARON SPALDING (hereinafter "Plaintiff" or "SPALDING") is *sui juris* and is a citizen of the United States of America and resident of Chandler, Arizona.

3. **THE DEFENDANT.** Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "Defendant" or "CARNIVAL"), is a citizen of the foreign nation of Panama, is incorporated outside of the state of Florida in the country of Panama, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami-

Dade County, Florida. At all times material hereto, CARNIVAL owned and/or operated the cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.

5. **VENUE AND PERSONAL JURISDICTION.** This action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the CARNIVAL. CARNIVAL at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or had an office or agency in this state and/or county; and/or

b) Engaged in substantial activity within this state; and/or

c) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**ALLEGATIONS COMMON TO ALL COUNTS**

7. **DATE OF THE INCIDENT.** The incident occurred on July 14, 2024.

8. **LOCATION OF THE INCIDENT.** The incident occurred onboard the vessel the *Carnival Panorama*, a ship in navigable water, while SPALDING was a passenger onboard. Accordingly, SPALDING'S claims are governed by general maritime law. Specifically, SPALDING'S incident occurred on the Lido deck, Deck 10, while the ship was in navigable waters.

9. **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, SPALDING was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10. ***CARNIVAL PANORAMA* AND THE DANGEROUS CONDITION.** CARNIVAL owns and operates 27 cruise ships which include the *Carnival Panorama.* On each and every one of CARNIVAL'S ships there is a Lido deck. CARNIVAL attracts passengers to the Lido deck as it consists of but is not limited to, pools, hot tubs, bars, dining, entertainment, and activities. The Lido Deck on the *Carnival Panorama*, Deck 10, is an open deck and thus exposed to the elements like rain and wind. Also located on Deck 10 are the Beach Pool, Tides Pool, and Spas. Passengers constantly and repetitively track water from these pools and spas throughout the deck. Due to all the activity, CARNIVAL requires its crew members to frequently inspect and dry the Lido Deck. CARNIVAL knows that its pool deck is slippery when it is wet. CARNIVAL also knows or should have known that water blends in with the floor on the open deck of the Lido Deck. CARNIVAL knows that passengers may not know how slippery its floors can be when wet, let alone with large accumulations of water and/or liquid. The wet flooring is not an open and obvious hazardous condition for passengers. Because of that, CARNIVAL must warn its passengers of the

dangerous condition and requires its crewmembers to place yellow caution signs to warn passengers about the wet and slippery floors.

11. **<u>DESCRIPTION OF THE INCIDENT.</u>** At approximately 11:00 a.m. on July 14, 2024, SPALDING was walking on the Lido Deck of the *Carnival Panorama.* SPALDING was walking in a crowd of people heading towards the doors near the RedFrog Rum Bar and towel hut located on the Lido deck. SPALDING was walking on the crowded open deck. While numerous passengers, including SPALDING, were crowding the Lido Deck, a CARNIVAL crew member decided to mop the floor and spread slick mop water across the surface of the Lido Deck on Deck 10 onboard the *Carnival Panorama*. The crew member had evenly spread water over a large portion, approximately ten (10) feet in diameter, of the slippery deck. While mopping and while the area was wet and slippery with mop water, the CARNIVAL employee failed to post any signs, cones, or other warnings, block off the area, put blowers on the floor of the area, put towels down on the area to dry the floor, and failed to guard over the area and use personnel to warn passengers. The slippery and/or wet floor was not readily apparent, when SPALDING suddenly slipped and fell on the unexpectedly slippery wet deck.

12. The CARNIVAL crew member that had mopped the subject area was still in the area at the time of the incident. The CARNIVAL crew member was standing next to a mop bucket with the mop in his hand.

13. Immediately following her fall, SPALDING was unable to get up off the deck and back on her feet due to severe pain in her left hip. Following her fall, SPALDING was eventually put on a stretcher and taken to the ship's Medical Center where x-rays were taken which revealed a displaced intertrochanteric fracture of her left hip. SPALDING was kept onboard the ship until

she was medically disembarked on July 16, 2024 in Puerta Vallerta, Mexico and was admitted to Hospiten Puerta Vallerta where she underwent a left hip repair surgery.

14. **DAMAGES**. As a result of CARNIVAL'S negligence, SPALDING has suffered serious, debilitating, and permanent injuries, including a displaced intertrochanteric fracture of her left hip. These injuries are permanent and significantly affect the life and abilities of SPALDING. These are extremely painful injuries and have caused and will continue to cause severe disability with permanent impairment. SPALDING has suffered these losses in the past and will continue to suffer them in the future. These injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. These injuries and damages also include but are not limited to noneconomic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

15. **NOTICE: PRIOR SIMILAR INCIDENTS.** Prior similar incidents show evidence that CARNIVAL had notice of the dangerous condition here. CARNIVAL documents slip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. Examples of prior similar incidents known to date include the following:

a) Passenger Giselle Dowling was severely injured when she slipped and fell on wet flooring on the Lido Deck on board the *Carnival Venezia* on July 26, 2023. *Giselle Dowling v. Carnival Corporation*, Case Number 1:24-cv-21505.

b) Passenger Laurie Rothenberg was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on the Lido Deck on board the *Carnival Panorama* on August 22, 2022. *Laurie Rothenberg v. Carnival Corporation*, Case Number 1:23-cv-22245.

c) Passenger Brenda Connell was severely injured when she slipped and fell on the Lido Deck on board the *Carnival Horizon* on August 10, 2019. *Brenda Connell v. Carnival Corporation*, Case Number 1:21-cv-23958. The *Carnival Horizon* and the *Carnival Panorama* are sister ships.

d) Passenger Sarita Pollard was severely injured when she slipped and fell on the Lido Deck on board the *Carnival Vista* on September 16, 2019. *Sarita Pollard v. Carnival Corporation*, Case Number 1:20-cv-24336. The *Carnival Vista* and the *Carnival Panorama* are sister ships.

e) Passenger Michelle Newbauer was injured on February 27, 2019 when she slipped and fell on the Lido Deck on board the *Carnival Magic*. *Michelle Newbauer v. Carnival Corp*., Case Number 1:20-cv-23757.

f) Passenger Hoffman was injured on December 24, 2018 when he slipped and fell on the Lido Deck on board the *Carnival Magic*. *Hoffman v. Carnival Corp*., Case Number 1:19-cv-25277.

g) Passenger Tammy Lopez was injured on October 6, 2019 when she slipped and fell on the Lido Deck on board the *Carnival Dream. Tammy Lopez v. Carnival Corp*., Case Number 1:22-cv-20669.

h) Passenger Herbert was injured when he slipped and fell on the Lido Deck near the Red Frog Bar on board the *Carnival Dream*. *Herbert v. Carnival Corporation,* Case No.: 16-cv-20289.

i) Passenger Writ was injured on December 9, 2015 when she slipped and fell while walking across the Lido Deck towards the buffet area on board the *Carnival Dream*. *Writ v. Carnival Corporation*, Case No.: 16-cv-25061.

j) Passenger Williams was injured on June 4, 2017 when he slipped and fell on the Lido Deck on board the *Carnival Liberty. Williams v. Carnival Corp*., 440 F. Supp. 3d 1316 (S.D. Fla. 2020).

k) Passenger Melissa Johnson was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on the Lido Deck on board the *Carnival Ecstasy* on August 28, 2013. *Melissa Johnson v. Carnival Corporation*, Case Number 1:14-cv-22345.

l) Passenger Maggie Thomas was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on board the *Carnival Breeze* on August 11, 2022. *Maggie Thomas v. Carnival Corporation*, Case Number 1:22-cv-22766-DPG.

m) Passenger Alysia A. Denize was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on the Lido Deck on board the *Carnival Pride* on January 2, 2022. *Alysia A. Denize v. Carnival Corporation*, Case Number 1:22-cv-24111.

n) Passenger Barbara Parsons was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on the Lido Deck on board the *Carnival Freedom* on July 6, 2019. *Barbara Parsons v. Carnival Corporation*, Case Number 1:21-cv-23689-JEM.

o) Passenger Judith Sysek was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on the Lido Deck on board the *Carnival Magic* on March 1, 2020. *Judith Sysek v. Carnival Corporation*, Case Number 1:21-cv-22554.

p) Passenger Mary Znaniec was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on board the *Carnival Pride* on October 3, 2019. *Mary Znaniec v. Carnival Corporation*, Case Number 1:20-cv-23734.

q) Passenger Sherri Britt was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on board the *Carnival Glory* on July 22, 2019. *Sherri Britt v. Carnival Corporation*, Case Number 1:21-cv-22726.

r) Passenger Ruth Lasher was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on board the *Carnival Sunshine* on April 24, 2015. *Ruth Lasher v. Carnival Corporation*, Case Number 1:16-cv-20057.

s) Passenger Adrian L. Irving was severely injured when he slipped and fell on wet flooring that had been mopped by a Carnival crew member on board the *Carnival Sensation* on August 29, 2019. *Adrian L. Irving v. Carnival Corporation*, Case Number 1:20-cv-23563-UU.

t) Passenger Latoya Lewis was severely injured when she slipped and fell on wet flooring that had been mopped by a Carnival crew member on board the *Carnival Sensation* on February 24, 2020. *Latoya Lewis v. Carnival Corporation*, Case Number 1:20-cv-24364.

u) Passenger Kathleen Harrison was injured on April 24, 2022 when she slipped and fell on the open deck of the Lido Deck on board the *Carnival Mardi Gras*. *Kathleen Harrison v. Carnival Corporation*, Case No.: 1: 23-cv-20633.

v) Passenger William Hornsberger was injured on December 12, 2021, when he slipped and fell on the wet and slippery open deck floors on Deck 16 while on board the *Carnival Mardi Gras*. *William Hornsberger v. Carnival Corporation*, Case No. 1:22-cv-20204.

w) Passenger Ana Martinez slipped and fell and sustained injuries on August 5, 2021, when she slipped on the wet, slippery open deck steps near the Patio Pool area of the *Carnival Mardi Gras*. *Ana Martinez v. Corporation*, Case No. 1:22-cv-21626.

x) Passenger Tammy Lopez was injured on October 6, 2019, when she slipped and fell on the wet and slippery open deck floors on the Lido deck on board the *Carnival Dream*. *Tammy Lopez v. Carnival Corporation*, Case No. 1:22-cv-20669.

y) Sarita Pollard was a passenger on the *Carnival Vista* on September 16, 2019. Pollard slipped, fell and was injured on the unreasonably wet, slippery, and/or hazardous flooring on the Lido Deck. *Sarita Pollard v. Carnival Corporation*, Case Number 1:20-cv-24336. The *Carnival Vista* and the *Carnival Panorama* are sister ships.

16. **NOTICE: CREW MEMBERS IN THE VICINITY.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that there was a crew member in the vicinity of the subject area.

17. **NOTICE: CAUTION SIGNS.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that CARNIVAL routinely posts caution signs in other areas of Deck 10.

18. **NOTICE: THE SIZE OF THE WET AREA.** Additional evidence that Carnival had notice of the dangerous condition here is shown by the size of the wet area which was at least ten (10) feet in diameter. SPALDING fell to the deck near the RedFrog Rum Bar and towel hut approximately 20-30 feet from the pool area. SPALDING'S shorts were soaked from the amount of water on the deck. For the wet area to be as large as it was, the condition existed for an extended period of time. CARNIVAL knew or should have known of this condition because of its large size, its shape, its characteristics and because the area of water existed on the pool deck for an extended, unreasonably long duration under the circumstances.

19. **NOTICE: THE LENGTH OF TIME THE DANGEROUS CONDITION EXISTED.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the length of time that the condition existed. In order for the wet area to be as large as it was, the condition existed for an extended period of time. The CARNIVAL crew member was mopping a significant portion of the Lido Deck and allowed the deck to remain wet without posting any warnings.

20. **NOTICE: CREW MEMBERS IN THE VICINITY OF THE SUBJECT AREA.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that there was a crew member in the vicinity.

21. **NOTICE: POLICY AND PROCEDURES AND TRAININGS.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that CARNIVAL for years, has created and implemented written policies, procedures, and trainings related to slip and fall hazards. CARNIVAL'S written documents instruct crew members that the open decks, including the area of this subject incident, are a crucial area to clean, dry, monitor, and inspect. CARNIVAL trains its crew that the open decks are one of the areas with the most potential slip and falls. These written documents instruct crew members that "good housekeeping is the first and most important (fundamental) level of preventing falls due to slips and trips." CARNIVAL uses Two Minute Trainers to train its crew members. Two Minute Trainers include written documents directing crew members to clean up spills and wet floors immediately. These documents also require crew members to place wet floor signs on floors that become repetitively wet and/or are known to be wet. CARNIVAL created these procedures for its crew because, without warnings, passengers may not know or be able to perceive that its floors are wet and/or

slippery. These policies and procedures are evidence that CARNIVAL had notice of the dangerous condition.

22. **NOTICE: FUN TIMES DAILY.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that CARNIVAL'S Fun Times daily newspaper states, "use caution on outdoor decks as they can be slippery."

23. **NOTICE: ON-GOING, REPETATIVE PROBLEM.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that the dangerous condition as it is an on-going repetitive problem. CARNIVAL's open decks often become wet and require mopping and/or cleaning. CARNIVAL cleans this deck regularly and knows that mopping and/or cleaning floors can cause slick conditions. This shiny synthetic flooring is unreasonably slippery when wet. Passengers can slip, fall and be injured on this flooring.

24. **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") CARNIVAL's decks are escape routes that CARNIVAL must maintain in a safe, clear, clean and dry condition. Upon information and belief, CARNIVAL, at all relevant times, was aware of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways and floor materials. See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel

Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

25. **NOTICE: CARNIVAL'S DOCUMENTATION**. CARNIVAL's knowledge of the dangerousness of its wet decks are documented in many ways. CARNIVAL logs prior complaints regarding slip and fall incidents in its guest services databases. CARNIVAL documents prior incidents of injuries in a database. CARNIVAL discusses and documents hazards on its ships during shipboard meetings which are memorialized in meeting minutes. CARNIVAL also inspects its floors through its crew members as well as retained experts and/or contractors who write reports and/or emails to CARNIVAL.

## COUNT I - NEGLIGENT FAILURE TO WARN

26. Plaintiff, SPALDING, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25, above.

27. This is an action against CARNIVAL for its negligent failure to warn passengers, including SPALDING, of its hazards, risks or dangers onboard the *Carnival Panorama*.

28. **DUTIES OWED BY CARNIVAL.** CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers. The Defendant owes a duty to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit. CARNIVAL owes a duty of reasonable care under the circumstances. CARNIVAL's duty of care includes warning of dangerous conditions on board the *Carnival Panorama,* including the Lido deck floor where SPALDING slipped and fell on July 14, 2024.

29. CARNIVAL had actual notice and/or constructive notice of the dangerous condition as alleged in paragraphs 15-25 above and incorporated herein.

30. **CARNIVAL BREACHED ITS DUTIES.** CARNIVAL breached its duty to warn SPALDING of the dangerous conditions on board the *Carnival Panorama*, including where SPALDING slipped and fell on July 14, 2024. CARNIVAL breached its duties to the Plaintiff by its actions and conduct. CARNIVAL, through its crew members, failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the subject area where SPALDING slipped and fell on July 14, 2024. CARNIVAL's crew members failed to cordon off the open decks or place physical barriers on the floors or otherwise to prevent access to the wet floors. CARNIVAL's crew members failed to reasonably and regularly make audible announcements about the wet surface. CARNIVAL also failed to comply with applicable industry standards, statutes, and/or regulations.

31. **PROXIMATE CAUSE.** CARNIVAL's failure to properly warn SPALDING of the dangerous conditions on board the *Carnival Panorama*, including the Lido deck area where SPALDING slipped and fell on July 14, 2024, proximately caused SPALDING'S injuries. Had CARNIVAL properly warned SPALDING of the dangerous condition, SPALDING would have been aware of the dangerous condition and never would have walked onto the wet flooring. SPALDING therefore would have never slipped, fallen and been injured on board the *Carnival Panorama* on July 14, 2024.

32. **DAMAGES.** As a result of CARNIVAL's negligent failure to warn, Plaintiff has and will suffer damages in the past and in the future as described in paragraph 14 and incorporated herein.

WHEREFORE, Plaintiff, SHARON SPALDING demands Judgment against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II - NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS**

33. Plaintiff, SPALDING, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25, above.

34. This is an action against CARNIVAL for its negligent design, construction and selection of the subject flooring.

35. **DUTIES OWED BY CARNIVAL.** CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers. CARNIVAL owes a duty of reasonable care under the circumstances. CARNIVAL'S duty to design, construct and select materials for all areas and features of its vessels, including the subject area, is part of CARNIVAL's duty of reasonable care under the circumstances. CARNIVAL had a duty to design the subject area including the flooring in a reasonably safe manner and in accordance with industry standards.

36. CARNIVAL has all its ships, including the *Carnival Panorama*, custom made to its own design and specifications. CARNIVAL participated in and/or approved of the design of the subject area including the subject flooring. CARNIVAL participated in and/or approved of the selection of the materials for the subject area including the subject flooring. CARNIVAL participated in and/or approved of the installation of the materials for the subject area including the subject flooring. CARNIVAL chose to install this same and/or similar flooring throughout its fleet. CARNIVAL uses—and has for many years—a synthetic decking surface on and around its pool decks which CARNIVAL knows or should know becomes dangerously slippery when wet. CARNIVAL continues to repair, modify and/or install the same and/or similar flooring on all its ships, including the *Carnival Panorama*. At all times CARNIVAL had the ultimate control over the design and construction of the *Carnival Panorama*. CARNIVAL had the right to inspect both the designs on paper and the design and construction at the yard. CARNIVAL had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the *Carnival Panorama* including the subject area and flooring. CARNIVAL had the right to reject any and all items, designs and construction. CARNIVAL holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved. CARNIVAL approved of the design, construction, and selection of materials of the subject area demonstrated by the fact that CARNIVAL has operated and maintained the ship continuously since on or about December 2019.

37. CARNIVAL had actual notice and/or constructive notice of the dangerous condition as alleged in paragraphs 15-25 above and incorporated herein.

38. CARNIVAL knew or should have known that the subject area including the flooring it chose and installed on the Lido Deck on the *Carnival Panorama* was unreasonably dangerous and slippery when wet.

39. CARNIVAL knew or should have known of the dangerousness of the floors on the Lido deck on board the *Carnival Panorama* since their installation in 2019.

40. **CARNIVAL BREACHED ITS DUTIES.** CARNIVAL breached its duty of care owed to SPALDING and was negligent by approving, designing, constructing, and/or selecting, the flooring for the Lido deck on board the *Carnival Panorama.* CARNIVAL failed to design, construct, select and/or approve materials that complied with industry standards. The design and/or materials CARNIVAL approved, selected and/or used to construct the open deck floors on Deck 10 on board the *Carnival Panorama* were unreasonably dangerous. CARNIVAL could have selected a different flooring material but chose not to.

41. **PROXIMATE CAUSE.** CARNIVAL'S negligent design, construction and selection of the flooring for the Lido deck on board the *Carnival Panorama* proximately caused SPALDING'S injuries. Had CARNIVAL properly designed, constructed and selected the flooring of the Lido deck on board the *Carnival Panorama,* SPALDING would never have fallen and been injured on July 14, 2024.

42. **DAMAGES.** As a result of CARNIVAL's negligent design, construction and selection of materials, SPALDING has and will suffer damages in the past and in the future as described in paragraph 14 and incorporated herein.

WHEREFORE, Plaintiff, SHARON SPALDING demands Judgment against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT III - NEGLIGENT FAILURE TO MAINTAIN**

43. Plaintiff, SPALDING, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25, above.

44. This is an action against CARNIVAL for its negligent failure to maintain the floor of the Lido deck onboard the *Carnival Panorama* in a safe manner.

45. **DUTIES OWED BY CARNIVAL.** CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers, including SPALDING. CARNIVAL owes a duty as a common carrier to its passengers to maintain all areas of its ship. CARNIVAL's duty of care includes maintaining the floor on the open deck of Deck 10 onboard the *Carnival Panorama* in a safe manner, including the subject area where SPALDING slipped and fell on July 14, 2024.

46. CARNIVAL had actual notice and/or constructive notice of the dangerous condition as alleged in paragraphs 15-25 above and incorporated herein.

47. **CARNIVAL BREACHED ITS DUTIES.** CARNIVAL breached its duty to maintain the floor in the Lido deck onboard the *Carnival Panorama* on July 14, 2024, in a safe manner. CARNIVAL breached its duties to SPALDING by its actions and conduct. CARNIVAL failed to maintain and inspect the area where SPALDING slipped and fell. CARNIVAL's crewmembers allowed the water or liquid to accumulate and did not clean, dry, or squeegee the water or liquid. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations.

48. **PROXIMATE CAUSE.** CARNIVAL'S failure to maintain the floor of the Lido deck onboard the *Carnival Panorama* in a safe manner, proximately caused SPALDING's injuries. CARNIVAL'S negligent maintenance allowed for a large portion of the Lido Deck to be slick and slippery with mop water for an extended period of time. The mop water made the deck unreasonably and unexpectedly wet and slippery. Had CARNIVAL properly maintained and inspected the floor of the Lido deck onboard the *Carnival Panorama*, SPALDING would have never slipped, fallen and been injured on *Carnival Panorama* on July 14, 2024.

49. **DAMAGES**. As a result of CARNIVAL'S negligent maintenance, SPALDING has and will suffer damages in the past and in the future as described in paragraph 14 and incorporated herein.

WHEREFORE, Plaintiff, SHARON SPALDING demands Judgment against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental

anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV - NEGLIGENT TRAINING OF PERSONNEL

50. Plaintiff, SPALDING, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25, above.

51. This is an action against CARNIVAL for its negligent training of its shipboard crew members.

52. **DUTIES OWED BY CARNIVAL.** CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers. CARNIVAL owes a duty of reasonable care under the circumstances. CARNIVAL owes a duty as a common carrier to its passengers to train its crew members to properly inspect, clean, dry and warn of dangers known to CARNIVAL where CARNIVAL invites or reasonably expects passengers to go. CARNIVAL's duty of care includes training its crew members to inspect, clean, dry and warn passengers about dangerous conditions on board the *Carnival Panorama* including where SPALDING slipped and fell on July 14, 2024.

53. CARNIVAL had actual notice and/or constructive notice of the dangerous condition as alleged in paragraphs 15-25 above and incorporated herein.

54. CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) failed to inspect and clean and dry the subject area.

55. CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Panorama* including where SPALDING was injured on July 14, 2024.

56. **CARNIVAL BREACHED ITS DUTIES.** CARNIVAL breached its duty of care owed to SPALDING and was negligent by failing to reasonably train its crewmembers to inspect, clean, dry and warn passengers of the dangerous conditions on board the *Carnival Panorama* including the subject area where SPALDING slipped and fell on July 14, 2024. CARNIVAL failed to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors. CARNIVAL failed to ensure the implementation or operation of its training programs described in paragraph 21 and incorporated herein.

57. At the time SPALDING fell on the Lido Deck, the crew member that was responsible for warning, cleaning, drying and inspecting that area failed to do so. Because that crew member was not properly trained, that crew member failed to properly and adequately warn passengers, like SPALDING, of the dangerous conditions on board the *Carnival Panorama* including the subject area where SPALDING slipped and fell on July 14, 2024. Because that crew member was not properly trained, that crew member also failed to properly inspect, clean, and dry the area.

58. **PROXIMATE CAUSE.** CARNIVAL's failure to properly train its crew members proximately caused SPALDING's injuries. Had CARNIVAL properly trained its crew members to inspect, clean, dry, and warn passengers about the dangerous conditions on board the *Carnival Panorama,* including subject area where SPALDING slipped and fell, the crewmember would have inspected, cleaned, dried, and warned SPALDING about the dangerous condition. Had CARNIVAL properly trained its crew members, the dangerous condition would not have existed. Had CARNIVAL properly trained its crew members SPALDING would have been aware of the

dangerous condition. SPALDING therefore would never have slipped, fallen and been injured on July 14, 2024.

59. **DAMAGES.** As a result of CARNIVAL's negligent training, Plaintiff has and will suffer damages in the past and in the future as described in paragraph 14 and incorporated herein.

WHEREFORE, Plaintiff, SHARON SPALDING demands Judgment against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V - NEGLIGENT SUPERVISION OF PERSONNEL

60. Plaintiff, SPALDING, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25, above.

61. This is an action against CARNIVAL for its negligent supervision of its shipboard crew members.

62. **DUTIES OWED BY CARNIVAL.** CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers. CARNIVAL owes a duty of reasonable care under the circumstances. CARNIVAL owes a duty as a common carrier to its passengers to supervise its crew members to ensure the crew members are properly inspecting, cleaning, drying and warning passengers about dangers known to CARNIVAL where CARNIVAL invites or reasonably expects

passengers to go or encounter. CARNIVAL'S duty of care includes supervising its crew members to ensure that the crew members are properly inspecting, cleaning, drying and warning passengers about dangerous conditions on board the *Carnival Panorama* including where SPALDING slipped and fell on July 14, 2024.

63. CARNIVAL had actual notice and/or constructive notice of the dangerous condition as alleged in paragraphs 15-25 above and incorporated herein.

64. CARNIVAL should have become aware that it had failed to properly supervise its crew members given that the crew member(s) failed to inspect and clean and dry the subject area.

65. CARNIVAL should have become aware that it had failed to properly supervise its crew members given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Panorama* including where SPALDING was injured on July 14, 2024.

66. It was foreseeable to CARNIVAL that passengers like SPALDING would suffer incidents if the area where SPALDING fell became unreasonably slippery. It was therefore foreseeable that the subject area would require proper inspection, cleaning, maintenance, warning passengers of the risk creating and/or dangerous conditions, and/or other efforts to make sure the area on board the *Carnival Panorama* where SPALDING fell was safe.

67. CARNIVAL elected to hire crewmembers to inspect, clean, and/or maintain the subject area and the vicinity, warn passengers of the risk creating and/or dangerous conditions, and/or make other efforts to make sure the area where SPALDING fell was safe, and it owed a duty to SPALDING and its passengers to properly supervise and train these crewmembers to adequately perform these inspections, cleanings, maintenance, warnings for passengers of the risk

creating and/or dangerous conditions, and/or other efforts to make sure the area where SPALDING fell was safe.

68. **CARNIVAL BREACHED ITS DUTIES.** At all times material, CARNIVAL through its officers, managers, recruiters, vessel, and/or other agents, employees, staff, crew, and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to SPALDING and was negligent through failing to reasonably supervise its crew members—that CARNIVAL knew or should have known that were dangerous, incompetent, unqualified, and/or liable to do harm—to ensure that its crew members were properly inspecting, cleaning, drying and warning passengers of the dangerous conditions on board the *Carnival Panorama* including the subject area where SPALDING slipped and fell on July 14, 2024.

69. CARNIVAL negligently knew or should have known that these crewmembers were dangerous and incompetent and liable to do harm to its passengers.

70. CARNIVAL failed to conduct a reasonable investigation regarding the competence of these crewmembers, including failing to adequately evaluate its crewmembers' performance during their tenure with it, including, but not limited to, by failing to properly review and/or analyze their success record in how often they were able to adequately inspect, clean, and/or maintain the subject area and the vicinity, and warn passengers of the risk creating and/or dangerous conditions, and/or make other efforts to make sure the area on board the *Carnival Panorama* where SPALDING fell was safe, and failing to adequately discipline and/or terminate their employment when their track record was inadequate and/or improper.

71. Both prior to and during the course of employment of said crewmembers, CARNIVAL became aware or should have become aware of problems with said crewmembers that indicated their unfitness and/or predisposition to failing to adequately inspect, clean, and/or maintain the subject area and the vicinity, warn passengers of the risk creating and/or dangerous conditions, and/or otherwise make sure the area where SPALDING fell was safe, for reasons that include, but are not limited to, that CARNIVAL received, made, and/or was otherwise aware of complaints of the same or similar errors, as well as previous failures to adequately perform inspections, cleanings, maintenance, warnings for passengers of the risk creating and/or dangerous conditions, and/or failures to perform other activities to help make sure the area where SPALDING fell was safe. CARNIVAL received complaints of these crewmembers' incompetence, and/or was otherwise aware that they did not have adequate training, qualifications, or experience for performing inspections, cleanings, maintenance, warnings for passengers of the risk creating and/or dangerous conditions, and/or failures to perform other activities to help make sure the area where SPALDING fell was safe, which indicated their unfitness and/or predisposition to committing errors, but CARNIVAL failed to take further action such as investigating them, discharging them, or reassigning them.

72. CARNIVAL breached its duty of care to SPALDING by failing to provide its crewmembers with proper supervision and/or training to adequately conduct inspections, cleaning, maintenance, warning passengers of the risk creating and/or dangerous conditions, and/or other efforts to make sure the area on board the *Carnival Panorama* where SPALDING fell was safe.

73. **PROXIMATE CAUSE.** CARNIVAL'S failure to properly supervise its crew members proximately caused SPALDING's injuries. Had CARNIVAL properly supervised its crew members to ensure that the crew members were properly inspecting, cleaning, drying, and warning passengers about the dangerous conditions on board the *Carnival Panorama,* including subject area where SPALDING slipped and fell on July 14, 2024, the crew member would have inspected, cleaned, dried, and warned SPALDING about the dangerous condition. If CARNIVAL had properly supervised its crew members, the dangerous condition would not have existed. If CARNIVAL had properly supervised its crew member SPALDING would have been aware of the dangerous condition. SPALDING therefore would never have slipped, fallen and been injured on the Lido deck on July 14, 2024.

74. **DAMAGES.** As a result of CARNIVAL'S negligent supervision, SPALDING has and will suffer damages in the past and in the future as described in paragraph 14 and incorporated herein.

WHEREFORE, Plaintiff, SHARON SPALDING demands Judgment against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands jury trial of all issues so triable.

DATED: February 21, 2025

Respectfully submitted,

/s/ Laurence M. Krutchik, Esq.
LAURENCE M. KRUTCHIK, ESQ.
Fla. Bar No. 0069449
LMK LEGAL
LMK@LMKLEGAL.COM
7450 SW 172nd Street
Palmetto Bay, Florida 33157
Ph: (305) 537-6866
*Attorney for Plaintiff,*
*Sharon Spalding*